The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Be seated. We'll be pleased to hear in our first case, 19-7795, United States v. John Jackson. Mr. Byrne. Thank you, Your Honors. Good morning. May it please the Court. My name is Jonathan Byrne. I'm here this morning on behalf of the defendant below, John Jackson. In 2019, when the District Court ruled on Mr. Jackson's motion for relief under the First Step Act, the District Courts were kind of struggling with how precisely to process those kind of claims. In the three years since, several decisions from this Court and the Supreme Court's decision in Concepcion have clarified that First Step Act sentences are sentences pretty much like any other, that most of the same procedural requirements apply, the same analysis applies, and that includes review of those sentences for reasonableness by this Court. The District Court in this case made two errors that led to the imposition of an unreasonable sentence. First, the District Court resolved a conflict over the applicable guideline range, but did not provide the parties with the additional ability to argue about the appropriate sentence in light of the resolution of the guideline conflict. And second, the Court based its decision to impose a sentence at the top of the new guideline range instead of the bottom, as it had done initially, on Mr. Jackson's disciplinary record in prison, which had never been disclosed to the defendant. So either one of those errors, we think, requires the vacation of the District Court's order and a remand in Mr. Jackson's case. Can you start with that, because that, I don't mean this in a bad way, but that seems to be false, right? What you just said, it seems to me to be wrong, which is that his disciplinary record was not disclosed to the defendant. I mean, it was his disciplinary record, right? I mean, he had it. He knew what he had been disciplined to and what that record was. He might not have gotten the copy that the Court got, but it's his information, right? It is his information, Your Honor, although we as defense counsel never got it, and the government didn't rely on it. That may be different, but you said the defendant didn't know it, right? And what I'm trying to tease out is that line and whether you think that could – the fact that you said he didn't know it suggests to me that you think that matters. And so I was trying to figure out why that matters. What matters, I think, Your Honor, is that we did not know of it, defense counsel, and did not know it was an issue, because as I said, the government and their response to the First Step Act motion was largely boilerplate, and that's not a critique. A lot of the motions we were filing back and forth were boilerplate at that point. But they didn't make any argument that his new sentence should be X because of his prison record, and this is what it was. And so the first time we got any indication that there was a disciplinary record out there was when the district court is saying, I'm only going to impose a new sentence at the top of the guideline range because of this record. How often in your experience – you represent other defendants in First Step Act cases. Yes. Is that fair? Right. How often is their post-conviction rehabilitation relevant, or does it come up in these First Step Act resentencings? I'd assume it's like 99.9% of the time. Is my sort of supposition wrong there? No, Your Honor. I think that's right. And part of what occurred here is going back to 2019, our office is trying to process a bunch of these First Step Act requests, and particularly if we have people who may be released immediately, want to try and speed that along as much as possible. But have you ever had a defendant that was being re-sentenced for any reason, right? So it's not just First Step Act, but a Rule 35 resentencing or any other context in which a defendant is being re-sentenced, in which you didn't put forward whatever positive post-sentencing developments have come forward. If somebody gets a GED, I assume in every case, unless you're committing malpractice, you're providing that information to the court, right? Generally speaking, Your Honor, yes. But I also assume that you don't put forward to the court the things that are bad, right? I mean, that's the nature of being a lawyer, right? You choose. But I guess what I'm having a little hard time seeing is your suggestion is that, well, we didn't know that his post-sentencing rehabilitation, or lack thereof in this case, was going to be relevant, that it was going to matter. And that strikes me as hard to get my head around, that you're a good lawyer. You come, obviously, from a very good office. I think you acknowledge that in every single re-sentencing case that you've ever seen, what the guy's done in prison is relevant. I would acknowledge that, Your Honor. I would say that the context of this case is that the attorney who handled it got it and said, oh, I don't think Mr. Jackson is a career offender anymore. His guideline range should only be 57 to 71 months. He's already done basically twice that. So that was the primary basis for relief. Totally fair. And I don't mean this in a bad way, but he might have an ineffective assistance of counsel claim if, in this particular instance, the lawyer didn't think to look at post-rehabilitation conduct. Although here, I don't think there'd be any prejudice, given that he didn't find what we now know is there. But I'm having a little hard time understanding why this is where we started. The point is that counsel didn't know, right? You started off by saying the defendant didn't know. Then you went to counsel didn't know. And to me, that seems hard because any competent counsel, of which your office is more than competent, knows that post-sentencing rehabilitation or lack thereof is often the central question in these re-sentencings. Not necessarily central. It can be important, and I think it depends on the particular case. And as I said here, I think the driving factor here was we thought that his guideline range was now not just lower than it was when he was sentenced, but half of the time he'd already served and that that was enough and that that was, again, trying to process this. Right, but that turns out to be wrong. Yes, that's right. And so, you know, the other thing criminal defense lawyers do really well is they make arguments in the alternative, right? I mean, that's the nature of your job is that, you know, he didn't do it. But if he did do it, he didn't know, right? And if he didn't know, I mean, you know, that's the nature of alternative arguments. Maybe you got that one wrong, but it seems like to me you had to know that his conduct post-sentencing was going to be relevant. Obviously it was in the end, Your Honor. But I think our position is that the error here is no one had crystallized that until the district court did it in the final order. And it would have been equally easy for the district court to have resolved the guideline range and said there is this disciplinary record. I'm ordering probation to turn it over to the parties. File further briefing, in which case we wouldn't be here. Wouldn't it have been just as easy for counsel to have submitted a reply brief to the government's briefing on the first step motion? Went five months and never said anything about the corrected guideline calculation. Made no argument at all. You say in your brief that the court didn't invite new argument and the court prevented this. But did the court prevent it? Counsel didn't file a thing after the government's response. Well, Your Honor, all I would say to that is that there is a difference between the government taking a contrary position and the district court resolving that in favor of the government. Because if this was an initial sentencing and everyone was there at a hearing, defense comes in and says he's not a career offender. Government comes in and says he is a career offender. Judge says defense, you're wrong. He's a career offender. This is the guideline range. Then they would proceed to an argument about what the proper sentence was. And in this case, we've got this dispute that's hanging out there and the district court resolves it and then goes on and does the rest of the 3553A analysis in the same order. And so it didn't give the parties a chance. Because it's a different argument, obviously. Didn't we in Collington, and I know this was after that, but in Collington, we explicitly said there's not going to be a requirement for a hearing in these First Step Act cases. So your argument seems to suggest that the court either has to hold a hearing, contrary to what we said in Collington, or the court in every case has to engage in a two-step paper motion submission, right? The parties submit their arguments about the guidelines, 3553A. All the things that you did, you had an opportunity to submit. But then once the court decides the guideline range, it needs to ask for further briefing on the same subject, but within the court's decided range. Do you think that should be the rule in every case? If I could back up just a smidge, we waived any right to a hearing in this case. And so I'm not suggesting the court was required to have a hearing. And my experience with these cases has largely been that there is not a dispute as to the guideline range. Well, there's not one on appeal, right, because now you admit that the government was right. I do, Your Honor, but I mean in the mine run of these First Step Act cases. But then in a situation where there is a dispute, and this was not a two- or three-year dispute, this was a ten-year dispute, that there is a situation where the district court needs to get argument from the parties based on the properly calculated guideline. What it concludes is the properly calculated guideline range. So what's the rule? When is a court required by law to order supplemental briefing once it decides the disputed guideline range? You're saying there has to be a significant gap between what the parties are arguing for? What do we tell district courts to do? I think the best practice is probably to do a second step in any situation where the guideline range is disputed. But certainly if there is a career offender designation or something that greatly increases the guideline range, then I think it's appropriate in that situation. Because we know from statistics that in the years after Mr. Jackson was originally sentenced, the percentage of within-guideline sentences for career offenders has dropped precipitously. Judge Chambers frequently varies downward from the career offender guideline. And so it is an entirely different argument. Well, and it's an argument that could be made in the alternative, right? If you see the government's response and then you could file a reply brief saying, if the court adopts the government's guidelines range, we would make these additional arguments for why the court should depart downward. But there was no reply here. That could have been done, Your Honor. That's true. I can't get around that. That said, I don't think that really is district court from its obligation, as it would have in any other sentencing, to get the arguments of the parties after a guideline dispute like that is resolved. Because under poly, sentencing is basically a three-step process. And the first step is correctly calculating the guideline range. And the second step is soliciting arguments basically based on that. And, of course, the guideline range is one of the 3553A factors. And so once that's set, if that changes the playing field significantly like it did here, I think it's incumbent on the district court, as I said earlier, to enter a second order and say, here's how to resolve the guideline dispute. What's your argument now? And particularly when we also have the issue with the disciplinary record, because regardless of what Mr. Jackson knew or anything else, that record's not in, or that disciplinary record was not part of the record when the district court made that decision. And the Larry case out of the Fifth Circuit that we cited in the brief says if the court's going to consider amended PSRs or reports from probation, those have to be shared with the parties. And so I think given the unique nature of this case, the district court had an obligation to go ahead and sort of have that second step. If there aren't any other questions, I'll save the rest of the time for rebuttal. Thank you. Thank you, counsel. I'll be happy to hear from you. Good morning, Your Honors. Nagar Kordestani on behalf of the United States. The defendant was put on notice nearly five months in advance of the district court's decision resentencing Mr. Jackson about the correctly calculated guideline range. The district court further went on, following what are now guidelines and rules for determining procedural reasonableness under Collington and related cases, and issued a correctly calculated guideline range and then resentenced the defendant within that guideline range. Therefore, this court should affirm the lower court because the sentence was procedurally reasonable. The district court got it right following what are now the precedents in Collington and related cases about what to do when faced with resentencing a defendant under the First Step Act. A plenary rehearing is not required. Defendant said a few times, or defense counsel rather, just like at an initial sentencing. As the court noted, this kind of analysis for procedural reasonableness under First Step Act doesn't require a hearing, and the court so noted in its decision. The court correctly calculated the guideline range. The court applied the 3553A factors in considering how to resentence this defendant. It also considered changes in case law and also changes in fact, which can include a defendant's post-sentencing conduct, as noted in both Chambers and Concepcion, and it chose not to depart or vary in any way, so no further. Can I go just sort of to get to the issue that strikes me as most interesting here? Yes, sir. The post-sentencing rehabilitation or lack thereof in this context, that's information that was held by the executive branch, right? The BOP had that information. Your Honor, I believe, and the United States would argue, as you noted in colloquy with defense counsel, that the defendant was singularly in the best position to know his own disciplinary record and his conduct. Yeah, but he knows it, but the information is held by the Bureau of Prisons. That's where people, this is the sentry system. I'm sorry, this was supposed to be the easy question. All right, so the Bureau of Prisons is what has his disciplinary record. I understand other people might have access to it, including himself, but the Bureau of Prisons has the Bureau of Prison disciplinary record, right? That's correct, Your Honor. And in this case, neither the defendant nor the government, that being the U.S. Attorney's Office, provided that information to the court. That's correct in that. All right, stay with me first. Yes, Your Honor. I'll give you a chance to answer. Instead, a part of the judicial branch went to the executive branch and got information that had not been provided by the parties, didn't tell the parties about receiving this information from the executive branch, and then relied on it to impose or to balance the sentence that it was going to choose. I just want to make sure that you agree that that's what happened here. Yes, I agree that the information contained in the probation office's memo was not provided to either of the parties. And that it came from the executive branch into the judicial branch. Yes, Your Honor, from BOP originally. All right, so if this was a full sentencing, so this was the first go-around, do you agree that that would be impermissible? So in other words, if at a sentencing, the district judge has the probation officer or his law clerk go to the executive branch and ask for information about the defendant that is not otherwise disclosed, and then relies on it to sentence the defendant, that that district court judge would be reversed for having done so. In the case of an original sentencing, yes, because the parties should have an opportunity to be able to be put on notice and to be able to object if necessary to the factual record the court is considering at sentencing. Right, and so here's, so great, this is where I was trying to get, I just wanted to make sure we were in agreement. So help me understand why that's different in a first step at re-sentencing. We say, and your colleague sort of used the term, you know, pretty much and mostly like, and that seems to be what we've said, and Collington Concepcion maybe cuts back that a little bit. But there is still some suggestion that it's like a sentencing in some respects. Right, and what I can't quite understand is how a first step at sentencing is so different that we would allow the judicial branch, ex parte, to go get information from the executive branch, which is a party before it, and rely on that information to sentence the defendant without letting either side know. And what I'm looking for is like, what principle would allow that to happen? Is there any case in which we've allowed a judicial branch employee or a judge to go get information from a party before it, ex parte, and rely on it to sentence a defendant? Your Honor, I think the crux of the matter here though is what is actually required under Collington is that there, rather, a hearing, it's not a plenary re-hearing, it's not an original sentencing. Totally fair, right, but the question is, can the, so your view is the district judge can literally do anything ex parte. He could just call the AUSA back in his chambers and say, hey, let's talk about what we ought to do here. I mean, how can we like really give it to this guy? And then, right, all ex parte, and so tell me a little bit more about this guy. What do you know, AUSA, about this guy? And then send the AUSA out the room, write the order, and say, well, I now know all these other facts about the defendant that I didn't know before, and I'm going to rely on them to sentence. Could they do that in a first step back case? No, they couldn't do that. Why not? Because, first of all, it would be ex parte and not permissible under ethical rules and procedural rules. But here, Your Honor, the probation office, the information it passed on to the court, it is a branch of the judiciary. It wasn't an ex parte situation where the United States. But where did the probation officer get it from? The probation officer got it from the Sentry System. Which is a BOP system. That is correct. Which is part of the executive branch. But I would point the court back to what it flagged in defense during defense counsel's argument, which is the information ultimately that was considered, which the court has wide discretion under the relevant precedent to re-sentence under Concepcion, under Collington and Swain. It was in the defendant's knowledge, as the court noted. He was in the best position to know it. And ultimately, Your Honor, I would argue that it would not prejudice him. Even if this court were to send the decision back, send the case back for re-sentencing, the court in its discretion could consider and should consider and is permitted under both chambers and Collington, excuse me, both chambers and Concepcion to consider intervening changes in fact. And when it did that at the re-sentencing, and I would submit what it would do if it was sent back, would re-sentence this defendant who had 35 separate infractions over the course of his disciplinary record in his post-sentencing conduct. It would re-sentence him to a similar within guideline range. So ultimately, it would amount to almost harmless error if that. If you ever had an instance in which you were a lawyer and the BOP records were inaccurate, have you ever seen the BOP get something wrong? That's rhetorical. You don't need to answer it, right? All right. So I hope it was rhetorical. Thank you, Your Honor. So maybe they're 35, right? But the point is that the defendant gets a chance to tell us whether that's right or wrong. And the defendant here had the chance in the sense that, again, I would point to ultimately he was in that position to best know what he did. And the court would, if sending it back, would ultimately most likely in its wide discretion and it could focus on other factors for re-sentencing if remanded. But it could focus on many different things. But it chose to focus on that. And I would submit that that. Can I ask two follow-up questions? Then I'm going to let my colleagues go. I'm sorry. I didn't mean to hog all your time. Of course, Your Honor. You just said that there were 35 violations. Where in the record is that? How do I know that? It's not part of the record, Your Honor. Okay. Because the disciplinary record or whatever it might be is not part of the record in any sense. That's correct. Okay. And then the second thing that I just wanted to add, these are just sort of factual questions. The district court's order directed that the probation officer file the memo regarding eligibility. And I've seen in other districts where the probation officer's eligibility memo, which is often like a chart in other districts, it is actually filed, right? So it's part of the record. And so two questions on that. One, that wasn't done here, right? It's not. We can't find that probation officer memo anywhere in the record. That's correct, Your Honor. Okay. And then second, is that the practice in your district? Or is the practice typically that probation does file that? In other words, it is part of the record. Because it looks like to me the district court orders probation to file on the record what it is giving to the court. In which case the district court would assume that the probation officer actually filed this. And so I would suspect was surprised to learn that nobody knew about the disciplinary record. And so what I'm trying to figure out, is that like the norm? Or do they always keep these eligibility memos secret? I know, Your Honor, under Rule 35 in terms of recommendations for sentencing, those can be permitted to be held, you know, not disclosed to the parties. But that's Rule 32 and that's during an actual sentencing. What I'm talking about is, are the eligibility memos by probation on first step back cases in your district, are they filed or not? Your Honor, I generally can't answer because I don't have any familiarity with that other than this one case. Thank you. Thank you, Your Honor. So going back to the question of procedural reasonableness, the defendant keeps arguing that there is a contested calculation or a disputing calculation. And that's just not the case, Your Honors. In this case, the parties originally briefed the eligibility. The defense was put on notice about the correct calculation through the United States calculation. And waited five months until the district court issued its decision. And the district court didn't make any error in calculation. And I think that's important for the court to consider when focusing on the issue presented of procedural reasonableness. Because there's quite a few cases that address, have sent the case back for resentencing when a district court either incorrectly calculated a guideline range or failed to consider 3553A factors like in Lancaster. But that's just not the case here. And the district court correctly calculated the guidelines. It didn't find the guidelines were mandatory, of course. It considered the factors under the sentencing guidelines, including this defendant's history and characteristics, the nature and circumstances of the offense, the need for deterrence. And, of course, considered the post-sentencing conduct, which is permissible under this court's recent precedent. And then when it did that, it sentenced the defendant to a within-guideline range. So there's no question here that in terms of notice, the court didn't fail to put the parties on notice that it was going to vary upward or depart. And for all those reasons, I think the district court, without having had the benefit of the later decisions in Chambers, in Collington, in Concepcion and Swain, actually did all the right things in crafting this sentence. Since my colleagues hadn't jumped in, I'll jump back in. So assume I think the district court did almost everything perfectly, except that the district court erred in relying on information from the BOP without providing notice. And maybe the district court actually told probation to provide notice and it didn't happen. But regardless, assume that that was the error, but I otherwise thought everything was done perfectly. Do you have a harmless error argument or do you agree that that's not something that we could find harmless? I think this court can absolutely find it as harmless error because it's not so damaging that it requires reversal. Again, I believe, or rather, the United States would argue that were this case sent back for resentencing, the district court, which undertook procedural reasonableness and substantive reasonableness, would arrive at the same sentence given the factors it's pointed out in its memorandum opinion and order. Would your answer be different if the defendant on appeal was disputing part of the disciplinary record that the district court relied on? Here, in its opinion, the district court listed certain offenses and things that it found troubling about his record. And on appeal, the defendant does not contest any of that. But hypothetically, if the defendant did contest that and said, no, that's actually inaccurate, that was taken off my record, that's a misrepresentation, would your answer about harmlessness and what would happen on remand change? I don't think it would, your Honor, in a hypothetical sense because, of course, this is not part of the factual record, but in thinking through what BOP procedures are in terms of maintaining and addressing disciplinary infractions, inmates have the opportunity, as infractions are issued, as disciplinary reports are issued, to contest them at that point. So I believe that, well, they would have those administrative processes. The defendant says he has a right to be sentenced based on accurate information. That's a due process right, to be sentenced based on accurate information. He's not saying in front of us that any of the information was inaccurate. But if it was inaccurate, are you saying, well, he should have exhausted that by getting his BOP records corrected and somehow we couldn't consider it a due process violation? I'm saying I believe that he would have had the opportunity administratively, but if there were, as the court is asking, hypothetically, a situation of contested records, which is not the case here, perhaps that may lead to a different result than harmless error. Can you give me an example of an instance where we found a sentence to be procedurally unreasonable and yet have engaged in harmless error review? Your Honor, this is embarrassing, but not off the top of my head, which I should be able to. I'm not sure it's embarrassing because I'm not sure it's ever happened. Thank you, Your Honor. Can you clarify for me where does the procedural unreasonableness come from? If Rule 32 doesn't apply in this context, which we know it doesn't, right? There's all sorts of requirements in there that don't apply. And the defendant doesn't have a due process argument because he's not contesting the accuracy of the records. What is the procedural unreasonableness that we would be looking at to determine whether it's harmless or not? The court would be looking at, I think, just basic concepts of notice and opportunity to respond. But since that's not being contested here, and for the first issue that the defendant raises as its primary or one of its main arguments about having an opportunity to respond for the correct guideline calculation, they did in that instance as well. So I just don't think that's applicable here. If there are no further questions, the United States would respectfully request that this court affirm the lower court because the re-sentence it crafted was procedurally reasonable. And it considered all the necessary requirements under the precedent of Collington in order to craft a sentence that meets the end of justice. Thank you. Thank you, Counsel. Mr. Byrne, you've got some time. Thank you, Your Honor. Starting off with the harmless error, I'd note that the government hasn't made a harmless error argument until today. Not in the initial round of briefing, not in the supplemental briefing after Collington. So I think that is waived from that standpoint. But in talking about that error... Can a procedural unreasonableness argument be harmless? I think the answer is yes, but I just... I think the answer is yes, Your Honor. But in this case, there's been talk about the reliability of the information from BOP.  And that's one of the reasons why I talked about the Minter case in our supplemental reply brief. Because that was a case that shares some similarities with Mr. Jackson's among the fact that he had a disciplinary record in prison and it was in front of Judge Chambers. And in that case, we were able to argue about the nature of those violations, how many of them happened in the course of a fairly lengthy term of imprisonment, and the fact that they were all dealt with administratively within the Bureau of Prisons. And Judge Chambers ultimately imposed a downward variant sentence to release Mr. Minter, but took his disciplinary record into consideration in modifying some of the conditions of supervised release. So even if all that information is accurate, and I don't have any reason to dispute it as I stand here today, there are other arguments about what that information means that might change the district court's mind as to the sentence it imposed. In the interest of full disclosure with regards to this disciplinary record, Mr. Jackson filed a pro se compassionate release motion while this appeal was pending. And in the response to that pro se motion, the government did attach a copy of the disciplinary record as it existed then. So it actually is in the record of the case, of the whole case. It was not in the record at the time Judge Chambers made his decision and we filed this appeal, but it is there now. Can I ask you, I don't want to eat up your time with this, but I am interested in the answer to Judge Richardson's question to your colleague. Do you know if it's the practice nowadays to have these filed on the record in every case? Like, I think it is in many other districts. I'm glad you asked that because I wanted to come back to that. Okay. I basically have been the point person in our office for handling all of these, the situations where we have all of these sentence reduction proceedings, starting with the guideline modification after the Fair Sentencing Act. And in those cases, generally what happened is the probation office prepared an amended pre-sentence, or an addendum to the pre-sentence report that included the new guideline calculations and a summary of what had been going on in prison, both good and bad. And those were disclosed to the parties, but they were not part of the record. They were not filed. So I have not seen where any of these have been filed in our district, aside from when one of the parties files it as an attachment to a memorandum or something like that. Can you explain what you mean by that a little bit? It's disclosed to the parties, but not filed. Yes. Meaning, like, you get it from probation? From probation, yes. They sort of send the email like they do with the original PSR to sentencing before it's entered by the court. Yes, Your Honor, that's correct. And for a long time, pre-sentence reports were not filed in our district either. That's a fairly recent development. So you said that with respect to the Fair Sentencing Act. Is that also true with the First Step Act? So are you similarly seeing in other cases at least these probation reports regarding eligibility, probation memos regarding eligibility, are they being provided to both parties, even if not filed? Not in my experience. That was the distinction I was going to make. Previously, they were. In this instance, they are not. And so are you aware of an instance in which it has been filed? I mean, it strikes me as odd here. The court orders probation to file it, which strikes me as having, like, a pretty defined meaning in our world, right, which is file it. Not to be circular, but it means to, like, file it on the record, right, not file it in the cabinet. And so any insights you can tell me? I mean, do you interpret that differently? I do not interpret that differently. And I don't want to say you because I understand this is not a description of a person, but that's not a red flag that there's something that you ought to see, I take it, because from your perspective you're not seeing these probation eligibility memos at all. To be honest, Your Honor, I don't know that they're being done in every case the way they were with the 3582C2 proceedings. Since those were all guideline driven, I think there was a sense that that's a probation office bailiwick to a certain extent. But with the First Step Act, because it's broader than that, maybe it hasn't been. But I honestly don't know. Thank you, Your Honor. We certainly appreciate counsel being here and arguing before us. As you probably know, our tradition is to come down and greet counsel. It's a tradition that many of us value a great deal. Unfortunately, in light of the circumstances, we have yet to resume that process. But let me assure you we greet you and thank you and hope that the next time you're in Richmond, we get a chance to shake your hand and thank you slightly more personally. Thank you so much for your time, Your Honors.
judges: Julius N. Richardson, Allison J. Rushing, Sherri A. Lydon